# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Valerie Mason,

                Plaintiff,

                                      Civ. No. 12-832 (RHK/JJK)
                                      **MEMORANDUM OPINION
                                      AND ORDER**

v.

Wipro Limited,

                Defendant.

Michelle Dye Neumann, Phillip M. Kitzer, Halunen & Associates, Minneapolis, Minnesota, for Plaintiff.

Adam B. Klarfeld, Andrew E. Tanick, Ford & Harrison LLP, Minneapolis, Minnesota, Josiah M. Black, Louise Reohr, Bello Black & Welsh, LLP, Boston, Massachusetts, for Defendant.

## INTRODUCTION

      In June 2010, Plaintiff Valerie Mason moved from Alabama to Minnesota after accepting a job with Defendant Wipro Limited ("Wipro"). Less than two years later, she was fired. She then commenced the instant action, alleging that Wipro had made false representations to induce her to accept the job. Wipro now moves for summary judgment. For the reasons that follow, the Court will grant its Motion.

## BACKGROUND

      The pertinent facts are undisputed. In June 2010, Mason was unemployed and living in Killen, Alabama. (Mason Dep. at 5-6.) She was actively job hunting while

completing a business and technology degree through Walden University, an online school based in Minneapolis. (Id. at 10, 74.)

Sometime that month, Mason received a telephone call from a company called Quantix, which was representing Wipro in a job search for a "release manager." (Id. at 20.)[1] The person hired for the position would be placed on an account at one of Wipro's clients, Best Buy. (Id.) Mason later spoke by telephone with Meetu Budholia, a Wipro human resources employee, who asked her to submit a resume to the manager of the Best Buy account, Francis Barbosa. (Id. at 21-22.) Budholia informed Mason that Best Buy had a "long-term contract" with Wipro and the anticipated position would be located at Best Buy's headquarters in Richfield, Minnesota. (Id. at 21, 23, 28.) This was appealing to Mason, as she had previously lived in Minnesota for 20 years and would not have to "worry about learning the lay of the land." (Id. at 53-54.)

Mason then had a telephone interview with Barbosa. (Id. at 23-24.) He informed her that the "expected role with Wipro would be long-term, lasting for the duration of the Best Buy contract." (Barbosa Aff. ¶ 5.) He also suggested that a "portfolio management" position might be better suited to her skills than a "release manager" position, and Mason offered to compose a job description for such a position. (Mason Dep. at 25.) Barbosa informed her that if she were hired, Wipro would create an

---

[1] The parties have not explained much of the terminology used in this case, including the terms "release manager," "enterprise business intelligence" (EBI), and "portfolio management." Nor, for that matter, have they explained the exact nature of Wipro's business. Its website, however, indicates that it is an information-technology consulting company based in Bangalore, India, employing more than 140,000 people worldwide. See http://www.wipro.com/about-wipro/ (last visited March 8, 2013); http://en.wikipedia.org/wiki/Wipro (last visited March 8, 2013).

information-technology team under her management to work on the Best Buy account, and she would not be required to travel outside the Minneapolis area to perform her job. (Barbosa Aff. ¶¶ 10-11.)

Mason asked Barbosa what tools Wipro was using to manage the Best Buy account, and he informed her the company was using a Microsoft Excel spreadsheet. (Mason Dep. at 25.) When she stated that she could not be successful in the anticipated job without a "professional portfolio management tool," Barbosa told her that Wipro "did have HPPM," referring to Hewlett Packard software for "portfolio management," but only parts of the software had been implemented by Wipro and he was unaware of all the details concerning that implementation. (Id. at 25-26.) Mason stated that the availability of HPPM "would be great, that would help me to be successful there." (Id. at 25.)

Mason then spoke again with Budholia by phone, discussing the job description she had drafted. (Id. at 30.) Budholia reported that Barbosa liked what he had seen and was interested in Mason "being part of the team." (Id.) The two discussed the possibility of reimbursement for relocation expenses if Mason were to accept the position, and Budholia asked Mason to complete a formal Wipro job application. (Id. at 31-33.) Mason subsequently spoke with Barbosa by phone and she again "walked through" the job description she had drafted. Barbosa thought the description was "right on" and did not foresee any necessary changes. (Id. at 45-47.) Mason later completed a formal job application and discussed with Budholia possible start dates, as Barbosa wanted her to start the week after Independence Day. (Id. at 39.)

In late June, Wipro sent Mason a proposed employment agreement (the "Agreement") by e-mail. (Id. at 40 & Exs. 6-7.) She carefully reviewed the Agreement, understood it, and asked questions where she had concerns. (Id. at 41.) She also requested certain changes be made to the Agreement, particularly with regard to the base salary for the position. (Id. at 41-43.) She noted her preliminary approval to Budholia and, before leaving Alabama for Minnesota, she received a final version of the Agreement and advised Budholia that it was acceptable. (Id. at 49.) She signed the Agreement upon her arrival in Minnesota. (Id.)[2]

The Agreement contained several critical provisions. First, it provided that Mason's employment with Wipro was "for no specified period" and would be "at will." (Agreement § 1.) Second, it provided that while Mason was being hired for the position of "senior manager," she could be required to perform "such other position(s) as the Company's Management may determine from time to time," and to undertake duties beyond those customary to her designated position. (Id. §§ 2.1, 2.2.) Third, it specified that Mason "may be required to work from a different" location than Best Buy's headquarters and "*will* be required to travel from time to time in the performance of [her] duties." (Id. § 2.4 (emphasis added).)[3] Fourth, and finally, the Agreement provided that it was "the entire agreement between the parties with respect to [Mason's] Employment

---

[2] The final version of the Agreement is annexed to the transcript of Mason's deposition as Exhibit 7.

[3] Indeed, the Agreement contemplated the possibility that Mason could be transferred to another city. (Agreement § 3.2.)

and supersedes all prior agreements, understandings and communications between the parties." (Id. § 8.6.)

Ultimately, things did not go as planned for Mason at Wipro. She contends that she was not given the responsibilities or tasks she had been promised and that the company failed to provide her with a "fully functional" HPPM. (Barbosa Aff. ¶ 9; Mason Decl. ¶¶ 4-5.) She also contends that Wipro did not create an information-technology team under her leadership. (Mason Decl. ¶ 5.)

In August or September 2011, Mason was removed from the Best Buy account. (Mason Dep. at 83.) She was told to look for other positions within the company, but the only ones available required extensive travel or relocation to India. (Mason Decl. ¶ 6.) After refusing to accept such a position, her employment was terminated in December 2011. (Id. ¶ 7.)

Mason commenced the instant action in March 2012 in the Hennepin County, Minnesota District Court; Wipro later removed the action to this Court. The Complaint alleges that Wipro violated Minnesota Statutes § 181.64 (Count I)[4] by making a number of false representations concerning her position at the company, which induced her to move to Minnesota. She also asserts a claim for promissory estoppel (Count II) based on those same representations. With discovery complete, Wipro now moves for summary

---

[4] In pertinent part, the statute renders it unlawful for an employer to "induce, influence, persuade, or engage any person to" move to Minnesota for work based on "knowingly false representations . . . concerning the kind or character of such work." Minnesota Statutes § 181.65 provides the vehicle for enforcing violations of § 181.64; it specifies that "[a]ny person who shall be influenced, induced, or persuaded to enter . . . employment . . . by means of any of the things prohibited in section 181.64, shall have a right of action for the recovery of all damages sustained in consequence" thereof.

judgment.  The Motion has been fully briefed, the Court heard oral argument on February 20, 2013, and it is now ripe for disposition.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The moving party bears the burden of showing that the material facts in the case are undisputed.  Id. at 322; Whisenhunt v. Sw. Bell Tel., 573 F.3d 565, 568 (8th Cir. 2009).  The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009); Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007).  The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078-79 (8th Cir. 2008).

## ANALYSIS

Mason's Complaint asserts claims based on "misrepresentations" that purportedly induced her to accept a job with Wipro and move to Minnesota.  The claims fail for two similar, but independently sufficient, reasons.

## I. No evidence of reliance

In the Complaint, Mason noted five specific "misrepresentations" allegedly made by Wipro that induced her to accept employment: (1) the position would be long-term; (2) she would utilize a "very specific skill set" in information technology; (3) HPPM would be available for her use in the position; (4) an information-technology team would be created under her leadership; and (5) she would not be required to travel for her job. (Compl. ¶ 6(a)-(e).) In her deposition, however, she was asked what had "caused her to accept the position with Wipro," and the tenor of her claims changed. Contrary to the assertions in her Complaint, she testified that she took the position because (1) it matched her abilities and was a "good fit" for her skills, (2) she had lived in Minnesota before and would not have to acclimate to the area, (3) the salary was appealing, (4) Walden University is located here, and (5) she had previously worked on a Best Buy account and "knew the culture" there. (Mason Dep. at 52-54.) She could recall no other reasons for accepting the position. (Id. at 54.)

This testimony is fatal. Each of Mason's claims requires proof of reliance,[5] but by her own admission, the "misrepresentations" specified in the Complaint did not factor into her decision to accept the job and move to Minnesota. In addition, none of the

---

[5] Promissory estoppel requires a plaintiff to show, *inter alia*, that she relied on the defendant's representations or promises. See, e.g., Park Nicollet Clinic v. Hamann, 808 N.W.2d 828, 834 (Minn. 2011). Similarly, a claim under § 181.64 requires a plaintiff to show that she was "induced, influenced, or persuaded" by the defendant's representations or promises, which is simply another way of saying the plaintiff relied upon them. See, e.g., Ferris v. Bodycote Lindberg Corp., Civ. No. 01-1689, 2003 WL 21517363, at *5 (D. Minn. June 30, 2003) (Davis, J.) ("An individual *relying* on representations prohibited by section 181.64 is entitled to recover damages sustained as a result.") (emphasis added); Kanner v. Fairmont Foods of Minn., Inc., No. C1-99-568, 2000 WL 31790, at *1 (Minn. Ct. App. Jan. 18, 2000) (same).

"new" matters discussed in her deposition can fairly be construed as a misrepresentation – indeed, most had nothing to do with Wipro at all, such as Walden University being located here or the fact she had previously resided in the area. Simply put, Mason's deposition testimony undermines her assertion that she relied upon Wipro's "misrepresentations," including the particular ones specified in the Complaint.

Apparently recognizing the damage done by her deposition, Mason has submitted a Declaration in opposition to Wipro's Motion that rehashes the allegedly false promises spelled out in her Complaint. (See Mason Decl. ¶ 1(a)-(e).)[6] But this will not save her claims – a plaintiff cannot avoid summary judgment simply by submitting an affidavit or declaration that "contradict[s] [her] own earlier [deposition] testimony." Am. Airlines, Inc. v. KLM Royal Dutch Airlines, Inc., 114 F.3d 108, 111 (8th Cir. 1997). Mason was pointedly asked in her deposition to provide all the reasons she accepted the job with Wipro, and she failed to mention any of the alleged misrepresentations now listed in her Declaration. She cannot subvert her own deposition testimony with a belated affidavit to avoid dismissal.[7]

---

[6] The Declaration differs in one minor respect from the Complaint: it has replaced the allegation that Mason would be utilizing a "specific skill set" with an allegation that Wipro promised her a laptop computer. (Compare Compl. ¶ 6(b) with Mason Decl. ¶ 1(d).)

[7] Mason's deposition did leave open a small window through which she could have – but has not – salvaged her claims. While she testified to the reasons she accepted the position, when asked if there were any other reasons, she stated that the ones provided were "*all that I remember right now*." (Mason Dep. at 54 (emphasis added).) It is possible that she recalled the additional reasons now specified in her Declaration at some point after her deposition. But she has proffered no explanation for any such sudden recollection, and as acknowledged at oral argument, at no point after her deposition did she seek to review and change the transcript of her testimony, as permitted under Federal Rule of Civil Procedure 30(e)(1)(B). The Court must look askance upon the Declaration under these circumstances. See City of St. Joseph v. Sw. Bell Tel.,

**II. Any purported reliance was unreasonable**

Even if the Court were to consider the "misrepresentations" Mason now points to, its analysis would not change. And this is because all of the so-called misrepresentations are undermined by the terms of the Agreement.

According to Mason's Declaration, she accepted the job with Wipro because she was promised (1) the position would be long-term, (2) an information-technology team would be created under her leadership, (3) she would not be required to travel, (4) a laptop computer would be provided to her, and (5) HPPM would be "purchased and fully functional."[8] (Mason Decl. ¶ 1(a)-(e).) But the Agreement contained provisions directly at odds with several of these alleged misrepresentations. For example, Mason alleges that Wipro promised her a long-term position, and yet the Agreement provided that her employment was "for no specified period" and would be "at will," terminable at any time. (Agreement § 1.) Similarly, she alleges that Wipro promised she would not have to travel for her job, but the Agreement provided that she "*will* be required to travel from time to time in the performance of [her] duties." (Id. § 2.4 (emphasis added).) Perhaps

---

439 F.3d 468, 476 (8th Cir. 2006) (failure to offer explanation for change in testimony, which came only in opposition to summary-judgment motion, rendered affidavit insufficient to create genuine issue defeating summary judgment); Am. Airlines, 114 F.3d at 111-12 (same); see also, e.g., Mitchael v. Intracorp, Inc., 179 F.3d 847, 854 (10th Cir. 1999) (excluding affidavit submitted in opposition to summary judgment that "more clearly recalled" matters about which witness previously testified).

[8] This last assertion is particularly disingenuous. While Barbosa told Mason that Wipro had HPPM, he also advised her that only parts of the software had been implemented and he was unaware of all the details. (Mason Dep. at 24-26.) Mason later testified that none of Barbosa's representations regarding HPPM were inaccurate or untrue. (Id. at 104 ("Q: During your discussions with [Barbosa], did he make any representations to you about HPPM that were not truthful? A: Not that I know of. Q: Did he make any promises about HPPM that he didn't fulfill later? A: No.").)

most importantly, the Agreement contained an integration clause providing that it was "the entire agreement between the parties with respect to [Mason's] Employment and supersedes all prior agreements, understandings and communications between the parties." (Id. § 8.6.)

For these reasons, the Court concludes that even if the misrepresentations alleged by Mason were in fact made, her reliance upon them was unreasonable.[9] Minnesota courts have repeatedly recognized that "[r]eliance is unreasonable as a matter of law when a 'written contract provision explicitly state[s] a fact completely contradictory to the claimed misrepresentation.'" Kamboo Market, LLC v. Sherman Assocs., Inc., No. A10-1810, 2011 WL 2518972, at *5 (Minn. Ct. App. June 27, 2011) (quoting Johnson Bldg. Co. v. River Bluff Dev. Co., 374 N.W.2d 187, 194 (Minn. Ct. App. 1985)); accord, e.g., Barker v. Cnty. of Lyon, 813 N.W.2d 424, 426-27 (Minn. Ct. App. 2012). Besides the direct conflicts noted above, the Agreement's integration clause scuttles any assertion that other arrangements or understandings between the parties existed beyond those specified in the Agreement. See, e.g., Crowell v. Campbell Soup Co., 264 F.3d 756, 763 (8th Cir. 2001) (applying Minnesota law) (reliance upon oral promises unreasonable where integrated contract specified that it was "the entire agreement between the

---

[9] Promissory estoppel requires *reasonable* reliance. See, e.g., Alliance Bank v. Dykes, Nos. A12-455, A12-485, A12-486, 2012 WL 6734457, at *12 (Minn. Ct. App. Dec. 31, 2012). And, a claim under § 181.64 is akin to a claim for fraudulent misrepresentation, see Maida v. Maxi-Switch Co., No. CO-88-1344, 1989 WL 452, at *2 (Minn. Ct. App. Jan. 10, 1989), which also requires *reasonable* reliance, see, e.g., Dykes, 2012 WL 6734457, at *12.

parties"); Northfield Telecomms., Inc. v. Maplewood Mall Assocs., L.P., No. A07-0687, 2008 WL 853537, at *9 (Minn. Ct. App. Apr. 1, 2008).[10]

Mason offers no persuasive arguments to the contrary. She contends that the Agreement was separate from the job description she had drafted for Wipro, and it was the job description, not the Agreement, that governed the expectations for her position. (Mem. in Opp'n at 16 ("[The] Agreement does not contain any details surrounding Mason's job description nor does it outline the job duties that the parties discussed in detail prior to Mason accepting Wipro's job offer. . . . [The] Agreement and Job Description should be seen as two separate documents that must both be considered.").) This argument relates to her allegation that she was promised job responsibilities that she did not in fact receive – an assertion found in her *Complaint* and belatedly filed *Declaration*, but noticeably absent from her *deposition testimony*. Regardless, she has nowhere indicated how any of the items that she now complains were "misrepresented" – the expected length of her tenure, the provision of a laptop, restrictions on travel, etc. – in any way contradicts the job description. Indeed, none of these items was even mentioned therein. (See Mason Dep. Ex. 1.)

In any event, the Agreement was not as narrow as Mason contends. She argues that it said nothing about "the tasks she would be performing and the duties she would be responsible for." (Mem. in Opp'n at 17.) To the contrary, the Agreement provided that she could be required to perform "such . . . position(s) as the Company's Management

---

[10] The reasonableness of a plaintiff's reliance, while sometimes presenting a fact issue, may be resolved at summary judgment when no reasonable jury could find in the plaintiff's favor. See, e.g., Barker, 813 N.W.2d at 426-27.

may determine from time to time" and that she might have to undertake duties different from those in her designated position. (Agreement §§ 2.1, 2.2.) Her complaints about her assigned job functions, therefore, falter on this language.[11]

## CONCLUSION

Besides those articulated above, other bases exist for granting Wipro's Motion,[12] but the Court need not address them. Mason's claims suffer from two critical flaws: she has failed to create a genuine issue that she relied upon Wipro's alleged "misrepresentations," and even if she could do so, such reliance would be unreasonable as a matter of law. Accordingly, and based upon all the files, records, and proceedings

---

[11] At oral argument, Mason's counsel attempted to liken this case to Vaidyanathan v. Seagate U.S., LLC, Civ. No. 09-1212, 2011 WL 881989 (D. Minn. Mar. 11, 2011) (Frank, J.), rev'd on other grounds, 691 F.3d 972 (8th Cir. 2012), arguing that there, as here, the assigned job duties differed from those promised to the plaintiff. But in Vaidyanathan, the plaintiff had no employment agreement expressly contradicting the representations on which he allegedly relied. Regardless, while Mason claims she was given different tasks from those promised by Wipro, she has offered no specifics about the alleged differences – indeed, they were not mentioned in her deposition testimony, and her belated Declaration provides, without elaboration, simply that she was "not given the responsibilities or tasks Wipro had promised" and the company "did not have [her] utilizing the skills . . . set out in the initial job description." (Mason Decl. ¶¶ 3-4.) Such "gauzy generalities are not significantly probative and, therefore, carry no weight in the summary judgment calculus." Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 59 (1st Cir. 2011); accord, e.g., Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984) (plaintiff's contradictory post-deposition affidavit that did "not give specific facts, but only generalities" insufficient to preclude summary judgment).

[12] For example, many of the company's alleged promises, such as the provision of a laptop, do not concern the "kind or character" of work Mason was to perform and, accordingly, cannot support a claim under § 181.64. E.g., Kanner v. Fairmont Foods of Minn., Inc., No. C1-99-568, 2000 WL 31790, at *1-2 (Minn. Ct. App. Jan. 18, 2000) ("[W]e believe the phrase 'kind or character' covers *the work to be performed* rather than the location of its performance.") (emphasis added). Further, "expectations of future events," such as the alleged representation that an information-technology team would be created, do not support a claim under the statute. E.g., Progressive Techs., Inc. v. Shupe, No. A04-1110, 2005 WL 832059, at *5 (Minn. Ct. App. Apr. 12, 2005). And, Barbosa's purported promise that he "*expected* [Mason's] role with Wipro would be long-term" (Barbosa Aff. ¶ 5 (emphasis added)), is simply too indefinite to support a promissory-estoppel claim. E.g., Friedman v. BRW, Inc., 40 F.3d 293, 297 (8th Cir. 1994).

herein, **IT IS ORDERED** that Wipro's Motion for Summary Judgment (Doc. No. 12) is **GRANTED**, and Mason's Complaint (Doc. No. 1, Ex. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date:  March 12, 2013                    s/Richard H. Kyle
                                         RICHARD H. KYLE
                                         United States District Judge